UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 2:18-cr-92-FtM-38MRM

HECTOR E. PENA

## ORDER

This matter comes before the Court on the Government's Motion to Revoke Pretrial Release (Doc. 27) filed on June 29, 2018. Defendant Hector E. Pena responded on July 3, 2018. (Doc. 38).

## BACKGROUND

This case stems from three separate instances where Pena sold guns and drugs to law enforcement officers. On September 21, 2016, a Lee County Sheriff's Office ("LCSO") confidential informant purchased $170.00 worth of powder cocaine and a $450.00 Smith & Wesson Model M&P 40 pistol from Pena. (Doc. 27 at 3). Then, on September 29, 2016, the LCSO and the Bureau of Alcohol, Tobacco, Firearms and Explosives conducted another undercover operation. (Doc. 27 at 3). This time they purchased $180 worth of cocaine and a $600 Glock Model 29, 10mm caliber pistol from Pena. (Doc. 27 at 3-4). Finally, on November 1, 2016, an LCSO informant purchased an unspecified amount of cocaine and an AK-47 type rifle from Pena for $820.00. (Doc. 27 at 5). All three transactions were recorded on audio and video. (Doc. 27 at 3-5).

These activities led to a six-count federal Indictment dated June 20, 2018 – two counts of knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), three counts of possessing with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2. (Doc. 3).

After Pena was taken into custody, United States Magistrate Judge Carol Mirando held a detention hearing on June 28, 2018. (Doc. 16). Pena was present and represented by Assistant Federal Public Defender James Lappan. (Doc. 16). The Government was represented by Assistant United States Attorney Jeffrey Michelland. (Doc. 16). After the hearing, Judge Mirando granted Pena's release on a $25,000.00 unsecured bond. (Doc. 17). The Government now seeks to revoke his bond. (Doc. 27).

## DISCUSSION

The Government moves to revoke Judge Mirando's Order releasing Pena on bond because there is a statutory presumption that no condition or combination of conditions will reasonably assure his appearance at future proceedings and because he is a danger to the community. Pena contends neither argument has firm footing. For the following reasons, the Court agrees with the Government.

When requested, the district court "must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *United Sates v. King*, 849 F.2d 485, 490 (11th Cir. 1988). The magistrate judge's pre-trial release order is reviewed de novo. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987). This requires the court to examine all facts presented on the record. *Id.*

The Bail Reform Act of 1984 guides a court's inquiry into the propriety of pretrial detention. *See King*, 849 F.2d at 487. Under this Act, the court weighs the merits of release against the safety of any other person and the community and whether any

conditions or a combination of conditions will reasonably assure the defendant's required appearance. 18 U.S.C. § 3142(e). A finding that the defendant poses a flight risk or is a danger to the community is sufficient to detain him pending trial. *King*, 849 F.2d at 488. Where there is probable cause to believe a defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," like in this case, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

The presumption is rebuttable. The defendant bears the burden of producing evidence "to suggest that he . . . [was] was either not dangerous or not likely to flee if turned loose on bail." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (internal quotations and citation omitted). The defendant does not have the burden of persuasion — that remains with the Government. *Id.* If the defendant successfully rebuts the presumption, the Government must show that the defendant is a danger to the community or a risk of flight. *King*, 849 F.2d at 488. For this showing, "the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relative to the factors listed in § 3142(g)." *Quartermaine*, 913 F.2d at 916 (alterations and citations omitted).

Here, Counts 2, 4, and 6 of the Indictment are based on three separate occasions where Pena knowingly possessed cocaine, a Schedule II drug under 21 U.S.C. § 812(a)(4), with the intent to distribute. (Doc. 3 at 2-4). These offenses carry a maximum prison term of twenty years. 21 U.S.C. § 841(b)(1)(C). Counts 1 and 3 charge that, as a convicted felon, Pena knowingly possessed a firearm, and he faces a maximum term of

imprisonment of ten years for these counts. (Doc 3 at 1, 3); *see also* 18 U.S.C. § 924(a)(2). And in Count 5, Pena is charged with carrying a firearm during and in relation to a drug trafficking crime, which carries a minimum mandatory sentence of five years to be run consecutive to any other sentence. 18 U.S.C. § 924(c)(1)(A).

The parties agree the rebuttable presumption applies in this case because a grand jury indicted Pena based on probable cause that he committed the six counts. *See King*, 849 F.2d at 487-88 ("[T]o trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment."). Thus, there is a rebuttable presumption there are no conditions or combinations of conditions that will assure Pena's appearance as required and the safety of the community. Here, the Government correctly relied on the presumption that Pena is a risk of flight and a danger to the community. Thus, it is up to Pena to rebut that presumption.

Pena first argues he is not a danger to the community. The Court is unconvinced. The Eleventh Circuit has used the Senate Judiciary Committee's report on the Bail Reform Act to ascertain what was meant by the word "danger." *Id.* at 487 n.2. The report states that

> [t]he concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.

*Report of the Senate Committee on the Judiciary*, S.Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195-96.

Against this backdrop, Pena's history indicates he is a danger to the community. Besides the instant offenses, he has been convicted of multiple felonies including carrying a concealed firearm, attempted robbery without a weapon, and possession of controlled substances. (Doc. 27 at 10-11). He has previously been sentenced to prison. Pena admitted in his pretrial services interview to using marijuana daily and to using cocaine and Xanax. (Doc. 7). He also tested positive for marijuana prior to his detention hearing. (Doc. 7).

Pena was also arrested about six weeks ago for possession of cocaine and fleeing to elude a law enforcement officer with lights and sirens activated. (Doc. 27 at 11). In its proffer to Judge Mirando, the Government gave a detailed outline of the underlying facts of the new state charges. A law enforcement officer observed a speeding vehicle that appeared to have sustained significant damage. (Doc. 32 at 18:1-14). The officer felt that the driver, who was later identified to be Pena, may have been attempting to flee from a crash. (Doc. 32 at 18:3-19). Although being pursued through the streets of Fort Myers by an officer who had activated his emergency lights and siren, Pena failed to pull over, continued to travel at a high rate of speed, fishtailed the vehicle, and ran red lights and stop signs. (Doc. 32 at 18:10-19:11). When Pena eventually stopped and exited the vehicle, a bag of what appeared to be powder cocaine fell from his person. (Doc. 32 at 19:12-15). A clear bag with a green leafy substance was found in the car's center console. (Doc. 32 at 19:15-17). These actions indicate Pena presents a significant danger to the community.

Next, Pena argues that he is not a flight risk for several reasons. He relies heavily on his local family ties. At the hearing and in his briefing, he stressed he lives with his mother, Rose Medina. But Pena had only been living with his mother for two days prior to his arrest. (Doc. 7 at 1). He had been incarcerated for a month prior to that, and according to Pena lived with his cousin at an unknown address in North Fort Myers, Florida. (Doc. 7 at 1).

Pena also argues he is not a flight risk because he is employed. Although employment is an important factor when considering an individual's ties to an area, *see* 18 U.S.C. 3142(g)(3)(A), the court does not accept such a representation at face value. Instead, it is relevant to look to the individual's specific role and tenure. Here, prior to his most recent incarceration on state charges, Pena had been a cook at a local restaurant for nine months. (Doc. 7 at 2). His employer was present in court and said that Pena could return to work if released. (Doc. 32 at 6:6-10).[1]

Pena further argues that his mother will serve as a third-party custodian and that an electronic monitor will track him. But that argument fails because the monitor does nothing to prevent a defendant intent on fleeing from removing it and doing so. In the past, Pena has had eight violations or revocations of supervision and four failures to appear at hearings, albeit a few years ago. (Docs. 7 at 3-7, 27 at 11).[2] This record concerns the Court because it shows a defendant who has a history of disregarding the

---

[1] The Government advised at the detention hearing that Pena's employer, Edwin Cruz, has six prior felony convictions and ten misdemeanor convictions on his record. (Doc. 32 at 14:11-23).

[2] The Government asserts the Defendant has had approximately eleven (11) bench warrants, eight (8) violations or revocations of supervision and four (4) failures to appear at hearings. (Doc. 27 at 11).

judicial pretrial process. Pena essentially asks this Court to believe that he will be different in this case. But the Court does not find that electronic monitoring, living with his mother, and working are enough to rebut the presumption that he is a flight risk and will appear as required during this case.

Finally, Judge Mirando found that Pena had overcome the presumption and found "unique" circumstances to release him. (Doc. 32 at 22:2-9). She concluded his charges were "very serious, drugs and guns" and the weight of the evidence is "quite strong." (Doc. 32 at 22:13-21). She further concluded that "his family ties are very strong" because his mother will serve as third-party custodian. (Doc. 32 at 23:15-17). And, she found that Pena would be employed if he was released. (Doc. 32 at 23: 17-19). Judge Mirando noted Pena has a custody case open for his daughter which should be incentive for him not to flee. (Doc. 32 at 23:1-14). Although one condition of child custody is that he remain drug free, she discounted that he tested positive for marijuana when he was arrested as being "residual." (Doc. 32 at 20:3-5). Judge Mirando acknowledged that Pena's criminal history is "quite lengthy and includes a number of violations of probation, failures to appear" which she admits "does not weigh in favor of release." (Doc. 32 at 24:21-24). She further stated,

> [b]ased on those violations and failures to appear, his record of failing to appear [at] court proceedings I just talked about, and his history, … the pending charge in State Court and the description of his fleeing, which was just a little over a month ago, also being a drug offense does not weigh in his favor. And I guess also the court considers whether he's a danger with anyone in the community, and I think the description that Mr. Michelland talked about with the chase, which certainly puts people in danger.

(Doc. 32 at 25:3-15).

Despite all significant findings on the record as to the weight to be given to the Government's evidence as to risk of flight and danger to the community, Judge Mirando found that "this is a little bit of a unique case" and held "there's not too many cases in which I can release a defendant to . . . a stable home, and a home in which a third-party custodian is there all the time." (Doc. 32 at 25:15-23). Notwithstanding his history, Judge Mirando found there were conditions that could reasonably assure Pena's appearance and the safety to the community should he be released on a bond. (Doc. 32 at 25:24-26:3).

But, after a de novo review of the pretrial services report, the audio recording and transcript of the two-part detention hearing, and the briefs and arguments of counsel, this Court finds there is a presumption Pena is a danger to the community and a risk of flight. Pena has not overcome that presumption. The Court can fashion no condition or combination of conditions to assure Pena's appearance as required and the safety of any other person and the community. Therefore, the Court will reverse the decision of Judge Mirando and revoke her order releasing Pena on pretrial release.

Accordingly, it is now

**ORDERED:**

1. The Government's Motion to Revoke Pretrial Release (Doc. 27) is **GRANTED**.
2. United States Magistrate Judge Mirando's Order (Doc. 17) releasing Pena is **REVOKED**.
3. Pena is **ORDERED** to turn himself in to the United States Marshal no later than **2:00 PM on July 5, 2018**, to be detained pending further proceedings.

**DONE AND ORDERED** in Fort Myers, Florida on this 5th day of July, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record